# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M. BRUCE VIECHNICKI, M.D., | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 06-2460 |
| | : | |
| UNUMPROVIDENT CORP., | : | |
| d/b/a THE PAUL REVERE LIFE | : | |
| INSURANCE COMPANY, | : | |
| Defendant | : | |

## M E M O R A N D U M

STENGEL, J.                                        February 8, 2007

This is an action brought by the beneficiary of a disability insurance policy against an insurance company for termination of coverage.  The insurance company filed a motion to dismiss the claims as preempted by the Employee Retirement Income Security Act ("ERISA").  The plaintiff filed two identical motions for summary judgment seeking that I determine that the disability insurance policy is not governed by ERISA, but by state law.[1]  For the following reasons, I will grant in part and deny in part the defendant's motion to dismiss, deny both of the plaintiff's motions for summary judgment, dismiss the plaintiff's state law claims, and order him to file an Amended Complaint asserting a claim under ERISA.

---

[1] These three motions seek a determination of whether ERISA governs the plaintiff's disability insurance policy and, if so, whether ERISA preempts the plaintiff's state law claims. Because I have considered all of the evidence gathered thus far, I will discuss the motions as a unit utilizing the standard for summary judgment.

## I. **BACKGROUND**

In October 1990, Dr. M. Bruce Viechnicki, an obstetrician/gynecologist, entered

into an insurance contract with the Paul Revere Life Insurance Company ("Paul Revere")

for the purpose of disability income protection coverage.  (Exhibit A of the Complaint).

In June 2003, Dr. Viechnicki was diagnosed with and began treatment for prostate

cancer, which included surgery.  As a result of the treatment, he can no longer stand for

prolonged periods of time, has loss of bladder control, and numbness and swelling in his

extremities.  Because these symptoms resulted in a decreased capacity to work, Dr.

Viechnicki experienced a loss of income.

On February 2, 2005, Dr. Viechnicki allegedly initiated a claim for disability

pursuant to the contract which Paul Revere denies receiving.  He reapplied for the claim,

and was informed that he would receive base benefits of $16,700 per month not to exceed

thirty months.  Dr. Viechnicki received three payments, i.e., August 2005, September

2005, and October 2005, and the benefits stopped.

In a letter dated January 16, 2006, Paul Revere informed Dr. Viechnicki that he

was entitled to payments up to the age of sixty-five pursuant to the contract; and that

because he was disabled within three months of sixty-five, he would receive only three

payments.[2]  (Exhibit C of the Complaint).  However, because he did not qualify for

disability for three full months prior to his 65th birthday, he was not eligible for more

_____

[2]  Dr. Viechnicki was born on September 1, 1940, and reached his 65th birthday on
September 1, 2005.

payments.  The Complaint alleges that because of the dilatory tactics of Paul Revere in handling his February 2005 claim, the time period expired for Dr. Viechnicki to make a claim for full disability under the policy.

Dr. Viechnicki initiated this suit against Paul Revere in the Lehigh County Court of Common Pleas, which included three claims under Pennsylvania state law:  Count I - Bad Faith under 42 Pa.C.S.A. § 8371; Count II - Breach of Contract; and Count III - Violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-2 to 201-9.2.

Paul Revere timely removed the case to federal court as a claim arising under the laws of the United States, i.e., ERISA.  Shortly thereafter, Paul Revere filed a motion to dismiss the claims arguing that they are preempted by ERISA.  Dr. Viechnicki responded that the disability insurance policy is not subject to ERISA because it is not an employee benefit policy, but an individual policy with the premiums being paid by him for his sole benefit.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v.

3

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. at 322.  Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.  The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  Id. at 252.  If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of

4

material fact, then the court cannot credit the movant's version of events against the

opponent, even if the quantity of the movant's evidence far outweighs that of its

opponent.  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363

(3d Cir. 1992).

## III. __DISCUSSION__

Title 29 of the United States Code § 1132(e)(1) provides U.S. District Courts with

exclusive jurisdiction over ERISA actions.  Congress enacted ERISA to protect

participants in employee benefit plans and their beneficiaries.  29 U.S.C. § 1001(b).  The

statute comprehensively regulates, among other things, employee welfare benefit plans

that, through the purchase of insurance or otherwise, provide medical, surgical, or

hospital care, or benefits in the event of sickness, accident, disability, or death.  Pilot Life

Ins. Co. v. Dedeaux, 481 U.S. 41, 44 (1987).

Here, the plaintiff insists that the disability insurance policy is an individual policy

governed by state law, not by ERISA.  The defendant argues that the record is clear that

the individual policy met the statutory definition of an employee benefit plan governed by

ERISA from its inception, and has not changed.  I agree.

Whether a plan is an ERISA plan is a question of fact, to be answered in light of

all the surrounding facts and circumstances from the point of view of a reasonable person.

Deibler v. United Food & Comm. Workers' Local Union 23, 973 F.2d 206, 209 (3d Cir.

1992) (quoting Wickman v. N.W. Nat'l Ins. Co., 908 F.2d 1077, 1082 (1st Cir. 1990).

However, where the record contains the undisputed terms of the disputed plan, as the record here does, a court may decide the applicability of ERISA as a matter of law. Faulman, et al. v. Security Mutual Financial Life Insurance Company, et al., 2006 U.S. Dist. LEXIS 60811, *18 (D.N.J. 2006).

To resolve the parties' dispute over whether the plaintiff's policy is part of an ERISA plan, I am guided by the five elements of 29 U.S.C. § 1002(1).  A disability insurance policy is governed by ERISA if it is obtained through (1) a plan, fund, or program; (2) that is established or maintained; (3) by an employer; (4) for the purpose of providing benefits; (5) to its participants or beneficiaries.  29 U.S.C. § 1002(1).

The Third Circuit Court of Appeals has held that a policy is a plan, for ERISA purposes, if from the surrounding circumstances a reasonable person could ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.  Smith v. Hartford Ins. Group, 6 F.3d 131, 136 (3d Cir. 1993).  The record contains Dr. Viechnicki's application for disability insurance which shows that the policy provided disability benefits to him as an employee of the College Heights OB/GYN Professional Corporation ("College Heights"); that 100% of the premiums would be paid for by College Heights who would receive a 15% discount per year on the premiums; and that any benefits would be paid directly to the insured.  A Paul Revere Insurance Benefits Sheet indicates two classes of eligible employees, i.e., physicians and all others.  See Def's Exhibit 2.  I conclude that a plan exists.

6

The second and third prongs of the test for determining ERISA's applicability require that the employer establish or maintain the plan.  The application lists College Heights as the plaintiff's employer and College Heights' address as the plaintiff's billing address.  The benefits sheet names College Heights as the policyholder.  A Paul Revere Administration Sheet provides the name of the College Heights' plan Administrator.  See Def's Exhibit 2.  Other employees of College Heights had also applied for the same coverage.  In fact, the evidence shows that ten employees were eligible to apply for the coverage, and that ten employees had applied.  Moreover, the purchase of insurance by an employer is strong, if not conclusive, evidence that the employer has established or maintained the plan under ERISA.  Tannenbaum v. Unum Life Insurance Co., 2006 U.S. Dist. LEXIS 66623, *18 (E.D. Pa. 2006) (quoting Brown v. The Paul Revere Life Insurance Co., 2002 U.S. Dist. LEXIS 8994, *5 (E.D. Pa. 2002)); see also Keenan v. Unum Provident Corp., 252 F.Supp.2d 163, 167 (E.D. Pa. 2003) (plan established or maintained by employer where the plaintiff's premium notice lists employer and has employer's address as plaintiff's billing address). Thus, I find that the plan was established or maintained by the employer.

The fourth prong asks whether the insurance plan was intended to provide a benefit.  That College Heights had agreed to pay the entire cost of the premiums leaves no question that it meant the plan as a benefit to its employees.  In addition, receiving a 15% discount in the premium payments by virtue of participation in the plan is also considered

a benefit, especially when the discount was available only because the insurance was purchased together with other employees of the company.  Tannenbaum, 2006 U.S. Dist. LEXIS 66623 at *24 (quoting Brown, 2002 U.S. Dist. LEXIS 8994 at *7).  The plaintiff also received a tax benefit because the premium payments would have been higher without the group discount and would have been payable with taxable income.  Id.

The fifth prong of the test for determining whether ERISA governs the plaintiff's policy requires evidence that the plaintiff was a participant or a beneficiary in the employee benefit plan.  ERISA defines a "participant" as an employee who is eligible to receive a benefit from an employee benefit plan.  29 U.S.C. § 1002(7).  A "beneficiary" is one who is designated by the terms of an employee benefit plan, who may become entitled to a benefit thereunder.  29 U.S.C. § 1002(8).  As shown above, the evidence reveals that Dr. Viechnicki was both a participant in the plan and a beneficiary.  Thus, all five prongs of the test have been satisfied.

The plaintiff argues that the policy somehow converted to an individual policy outside the protections of ERISA when he assumed payment of the premiums.  Other than this change of payor, the plaintiff offers no facts to support this contention.  The record reveals, however, that the original disability insurance policy remained intact from 1990 until the date of his claim for disability in 2005.  Attached to his motions for summary judgment, the plaintiff provided the policy schedule of the Paul Revere policy.  See Pl.'s Exhibit A.  This schedule reveals the same policy number and the same date of issue as

when the policy was originally purchased in 1990.  It also indicates that the policy is still part of the "15 Employee Security Plan" with a preferred premium.  The plaintiff is still getting the benefit of the original fifteen percent discount.  Nothing about the policy itself changed.

Moreover, other courts have declined to accept the proposition that when the employee assumes the payment of the premiums in place of the employer, the policy is no longer governed by ERISA.  See <u>Massachusetts Casualty Ins. Co. v. Ronald Reynolds</u>, 113 F.3d 1450 (6th Cir. 1997) (when the employee assumed payments after leaving his employer, the individual policy remained in force without change; the policy continued, it had not been converted); <u>see also</u> <u>Stern v. Provident Life and Accident</u>, 295 F.Supp.2d 1321 (M.D. Fla. 2003) (because the plans were established as ERISA policies, they remain subject to ERISA; the case law, as developed, suggests that once ERISA, always ERISA); <u>Griggers v. Equitable Life Assur.</u>, 343 F.Supp.2d 1190, 1196 (N.D. Ga. 2004) ("Plaintiff's argument that ERISA ceased to apply once she began paying the policy premium is inconsistent with precedent . . . and, if accepted, would invite the conflicting state and local regulation of employee benefit plans that Congress sought to prevent by enacting ERISA"); <u>Albright v. Union Bankers Ins. Co.</u>, 85 F.Supp.2d 1302, 1305 (S.D. Fla. 1999) (the continuation of payments by an employee into an insurance policy after his termination does not change coverage under a policy governed by ERISA; rather, this constitutes a continuation of coverage, and ERISA continues to govern the insurance

policy).

In light of all the surrounding facts and circumstances including the undisputed terms of the plaintiff's disability policy, I find that the Paul Revere policy was originated as part of an employee welfare benefit plan subject to ERISA, and has remained so notwithstanding the change of payor.  I must next determine whether ERISA preempts the plaintiff's state law claims.

Because of its comprehensive regulation, ERISA broadly preempts all state laws that "relate to any employee benefit plan."  29 U.S.C. § 1144(a).  This provision preempts both state common law and statutory causes of action.  See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990); Pilot Life, 481 U.S. at 47-48.  A law "relates to" an employee benefit plan if it has a connection with or reference to such a plan, even if it was not designed to affect such plans or does so only indirectly.  See Ingersoll-Rand, 498 U.S. at 138; Shaw v. Delta Airlines, Inc., 463 U.S. 85, 97 (1983).  The Supreme Court noted that "policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."  Pilot Life, 481 U.S. at 54.  Thus, any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear Congressional intent to make the ERISA remedy exclusive and is preempted. Aetna Health, Inc. v Davila, 542 U.S. 200 (2004).

10

For a state law to be deemed a law which regulates insurance under §
1144(b)(2)(A), it must satisfy two requirements:  (1) the state law must be specifically
directed toward entities engaged in insurance; and (2) the state law must substantially
affect the risk pooling arrangement between the insurer and the insured.  Kentucky
Association of Health Plans, Inc. v. Miller, 538 U.S. 329, 341-342 (2003).  ERISA's
savings clause does not require that a state law regulate "insurance companies" or even
"the business of insurance" to be saved from preemption; it need only be a "law of any
state which regulates insurance."  Id. at 336.

Here, two of the three state law claims in the Complaint fail the first prong of the
Miller test.  First, the common law claim of breach of contract is not specifically directed
toward entities engaged in insurance, as required to satisfy the first prong.  These causes
of action cover most, if not all, business relationships.  Moreover, other courts have held
that these state law causes of action are preempted by ERISA.  See Pilot Life, 481 U.S. at
48, 52 (ERISA preempts state law actions for breach of contract); Pryzbowski v. U.S.
Healthcare, 245 F.3d 266, 278 (3d Cir. 2001) (suits against insurance companies for
denial of benefits, even when the claim is couched in terms of common law negligence or
breach of contract, are preempted).

Second, the claim brought under Pennsylvania's Unfair Trade Practices and
Consumer Protection Law is also not specifically directed toward entities engaged in
insurance.  See 73 Pa.C.S.A. § 201-1, *et seq*.  Rather, this statute prohibits unfair methods

of competition and unfair or deceptive acts or practices in the conduct of "any trade or commerce" and also contains specific media liability provisions.  See 73 Pa.C.S.A. § 201-3.  Therefore, because these two counts in Dr. Viechnicki's Complaint do not involve state laws which regulate insurance under § 1144 (b)(2)(A), they are preempted by ERISA, and will be dismissed.

Only one count in the Complaint, i.e., the bad faith claim, arises under a statute which is specifically directed at entities engaged in insurance.  See Pennsylvania's Bad Faith Statute, 42 Pa.C.S. § 8371.  Nevertheless, the Third Circuit Court of Appeals has held that ERISA preempts the bad faith statute.  Barber v. UNUM Life Insurance Co. of America, 383 F.3d 134 (3d Cir. 2004).  Thus, this count will also be dismissed.

Courts have held that when a plaintiff's claims are completely preempted by ERISA as here, dismissal without prejudice to assert an ERISA claim is an appropriate course.  See Cecchanecchio v. Continental Casualty Co., 2001 U.S. Dist. LEXIS 356 (E.D. Pa. 2001) (dismissal with leave to file an Amended Complaint with proper ERISA claim); Delong v. Teacher's Ins. and Annuity Ass'n, 2000 U.S. Dist. LEXIS 4759 (E.D. Pa. 2000) (dismissal without prejudice to file an Amended Complaint with ERISA claim after exhaustion of administrative remedies).  Such a claim would ordinarily relate back to the initial filing date for limitations purposes pursuant to FED. R. CIV. P. 15(c)(2).

In conclusion, the state law claims in Dr. Viechnicki's Complaint are preempted by ERISA, and are therefore dismissed.  I will grant the plaintiff leave to file an amended

12

Complaint asserting an ERISA claim.

An appropriate Order follows.