IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M. BRUCE VIECHNICKI, M.D., Plaintiff | : : : | CIVIL ACTION |
| v. | : : | NO. 06-2460 |
| UNUMPROVIDENT CORP., d/b/a THE PAUL REVERE LIFE INSURANCE COMPANY,[1] Defendant | : : : : : | |

# MEMORANDUM

**STENGEL, J.**                                                                 June  /1  , 2008

This is an action brought by the beneficiary of a disability insurance policy against an insurance company for termination of coverage. Finding that the policy was governed by the Employee Retirement Income Security Act ("ERISA"), I ordered the plaintiff to file an Amended Complaint. The parties have filed cross-motions for summary judgment. For the following reasons, I will grant the defendant's motion and deny the plaintiff's motion.

## I. BACKGROUND

On October 22, 1990, Dr. M. Bruce Viechnicki, an obstetrician/gynecologist, entered into an insurance contract with the Paul Revere Life Insurance Company ("Paul

---

[1] According to the defendant, the plaintiff has improperly characterized UnumProvident Corporation as doing business as The Paul Revere Life Insurance Company. The Paul Revere Life Insurance Company is an indirect wholly owned subsidiary of UnumProvident Corporation, and issued the disability insurance policy involved in this action.

Revere") for the purpose of disability income protection coverage. (PRLCL 3-33).[2]

In June 2003, Dr. Viechnicki was diagnosed with and began treatment for venous insufficiency, which included surgery, i.e., a right greater saphenous ablation. (PRLCL 55). As a result of the treatment, Dr. Viechnicki could no longer stand for periods longer than three hours at a time. Id.

In October 2004, Dr. Viechnicki was diagnosed with prostate cancer and underwent the removal of his prostate. (PRLCL 62). On an Income Protection Claim Form dated March 9, 2005,[3] Dr. Viechnicki indicated that excessive swelling and pain in his legs hindered him from working full-time, that the pain from the prostate cancer surgery also hindered his abilities, and that the cancer surgery resulted in a loss of bladder control, and numbness and swelling in his extremities. (PRLCL 50-53). Because these symptoms resulted in a decreased capacity to work, Dr. Viechnicki experienced a loss of income. Id. His claim, therefore, was one for residual disability[4] benefits as opposed to

---

[2] The administrative record contains the underwriting and claims files concerning the plaintiff and is Bates-stamped "PRLCL." The insurance policy itself is Bates-stamped "PRLSP."

[3] Dr. Viechnicki allegedly sent a claim for benefits on February 2, 2005, which Paul Revere denies receiving.

[4] "Residual Disability," as of the Commencement Date, is defined in the policy to mean that due to injury or sickness: (a) your loss of earnings is equal to at least 20% of your prior earnings while you are engaged in your occupation or another occupation; and (b) you are under the regular and personal care of a physician. (PRLSP 7). However, prior to the commencement date, the claimant must also be (a) unable to perform one or more of the important duties of his occupation; or (2) unable to perform the important duties of his occupation for more than 80% of the time normally required to perform them. Id. The commencement date is defined in the policy as the day shown on the Policy Schedule when benefits begin during a disability. Id.
(continued...)

one for total disability[5] benefits. (PRLCL 43).

In a letter dated May 13, 2005, Paul Revere informed Dr. Viechnicki that he would receive base benefits of $16,700 per month for a period not to exceed thirty months; and that because the policy was issued with a 90-day elimination period,[6] benefits would begin to accrue as of June 30, 2005, using April 1, 2005 as a disability date. (PRLCL 74). However, because he satisfied the definition of residual disability during April and May 2005, but not in June 2005,[7] Paul Revere closed his claim. (PRLCL 497). On July 1, 2005, Dr. Viechnicki's claim was reopened with a disability date of July 1, 2005.

On July 12, 2005, Paul Revere verified that Dr. Viechnicki's restrictions and limitations as described by his physician were supported by the medical record. (PRLCL

---

[4](...continued)
Disability is defined in the policy as a continuing period of Total and/or Residual Disability. Id. Here, the Policy Schedule indicates that the Commencement Date is on the 91st day of disability. (PRLSP 3).

[5] "Total Disability" is defined in the rider to the policy to mean that because of injury or sickness: (1) You are unable to perform the important duties of your regular occupation; and (2) You are under the regular and personal care of a Physician. (PRLSP 6, 19).

[6] Though not defined in the policy, an elimination period is defined by the American Independent Underwriters Association as the period after the onset of an illness or injury during which no benefits are paid, effectively providing for a deductible. Common in long-term care policies, although some insurers offer policies with no elimination period. See http://www.aim-aiu.com/glossary.htm#Elimination%20Period; see also www.dictionary.com (The length of time between when an injury or illness begins and receiving benefit payments from an insurer. Also known as the "waiting" or "qualifying" period, policyholders must in the interim pay for these services and can be thought of as a deductible).

[7] Dr. Viechnicki did not suffer a 20% loss of income in June 2005 which is necessary to qualify for residual disability benefits for that month.

43). After an investigation, Paul Revere concluded that Dr. Viechnicki performed less procedures and had less income in 2004-2005 while continuing to work and conduct hospital-based procedures and deliver babies. (PRLCL 344-372).

Paul Revere notified Dr. Viechnicki by letter dated July 14, 2005, that it was waiving the payment of premiums on his disability insurance policy because his disability had continued for a period of ninety days. (PRLCL 373). He received three benefit payments, i.e., August 2005, September 2005, and October 2005, after which the benefits stopped because he had reached his sixty-fifth birthday.[8] (PRLCL 497-498).

On October 17, 2005, Paul Revere provided Dr. Viechnicki a status of his claim. After investigation, Paul Revere determined that Dr. Viechnicki had suffered the requisite 20% loss of earnings during April, May, July, August, and September 2005, but not in June 2005. Accordingly, Paul Revere "pushed out" Dr. Viechnicki's elimination period an additional month, resulting in his benefits beginning to accrue as of July 30, 2005. (PRLCL 476).

In a letter dated January 16, 2006, Paul Revere informed Dr. Viechnicki that he was entitled to payments up to the age of sixty-five pursuant to the contract; and that

---

[8] The policy provides that: "In no event will we pay Residual Disability benefits beyond your 65th birthday unless Residual Disability begins within 3 months of your 65th birthday. In that case, we will pay this benefit for a period not to exceed 3 months while you remain Residually Disabled." (PRLCL 497-498; PRLSP 7).

because he was disabled within three months of his sixty-fifth birthday,[9] he would receive three payments, the maximum benefit for residual disability benefits under his policy. (PRLCL 497-498). Further, Dr. Viechnicki was informed that he was not eligible to exercise the renewal option for total disability benefits because he was not actively and regularly employed full-time at age sixty-five. Id. Dr. Viechnicki was given 180 days to file an appeal of this decision. Because Dr. Viechnicki chose not to appeal, Paul Revere's decision became final after the expiration of the 180 days. (PRLCL 497-498).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of

---

[9] Dr. Viechnicki was born on September 1, 1940, and reached his 65th birthday on September 1, 2005.

proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. at 322. Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252. If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. DISCUSSION

Title 29 of the United States Code § 1132(e)(1) provides district courts with exclusive jurisdiction over ERISA actions. Congress enacted ERISA to protect participants in employee benefit plans and their beneficiaries. 29 U.S.C. § 1001(b). The statute comprehensively regulates, among other things, employee welfare benefit plans that, through the purchase of insurance or otherwise, provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44 (1987). Under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), a plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The Supreme Court has explained that a decision to deny benefits "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). When the administrator is given such discretion, the court generally should apply the "arbitrary and capricious" standard. In our circuit, a court should overturn the decision of a plan administrator "only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993). Additionally, when an administrator's decision is potentially clouded by a

conflict of interest, such as where a plan administrator also funds the plan it administers, the conflict must be considered in assessing the amount of deference to be given to the administrator's decision. Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 387 (3d Cir. 2000). Thus, in those circumstances, a modified or "heightened" arbitrary and capricious standard of review is appropriate. Id. at 390-392. A special danger of a conflict of interest that warrants applying this heightened standard of review arises when a plan is both funded and administered by an administrator outside of the employer company, such as an insurance company. Id. at 388. When faced with such a situation, the court should use a sliding scale approach to adjust the arbitrary and capricious standard, which grants the administrator deference in accordance with the level of conflict. Post v. Hartford Ins. Co., 501 F.3d 154, 161 (3d Cir. 2007). In adjusting that standard, the court should consider the following four factors: (1) the sophistication of the parties; (2) the information accessible to the parties; (3) the exact financial arrangement between the insurer and the company; and (4) the status of the fiduciary, as the company's financial or structural deterioration might negatively impact the presumed desire to maintain employee satisfaction. Stratton v. E.I DuPont De Nemours & Co., 363 F.3d 250, 254 (3d Cir. 2004) (citing Pinto v. Reliance Standard Life Ins. Co., 214 F.3d at 392).

Paul Revere argues that its decision to limit benefits should be reviewed under the discretionary arbitrary and capricious standard. Dr. Viechnicki does not address which

standard of review is most appropriate, but makes reference to the defendant's proposed standard in his response to Paul Revere's motion for summary judgment: "As such, even under the arbitrary and capricious standard put forth by Defendant this Honorable Court must find in favor of Dr. Viechnicki and deny Defendant's Motion for Summary Judgment." See Document #28-2 at 9. Later in his response, Dr. Viechnicki seems to concede the proposed standard: "Defendant violated its fiduciary duty, and without support in the administrative record has acted **arbitrarily and capriciously** and has harmed Dr. Viechnicki." Id. (emphasis added).

To determine, however, the proper standard for reviewing the decision of an administrator of a plan covered by ERISA, a court begins with the language of the plan. Post v. KidsPeace Corp., 98 Fed. Appx. 116, 120 (3d Cir. Pa. 2004) (citing Luby v. Teamsters Health, Welfare & Pension Trust Funds, 944 F.2d 1176, 1180 (3d Cir. 1991)). Although an express reservation of discretion is preferred, discretion may reasonably be inferred from the policy language. Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 114 (3d Cir. 1994) (citing Luby v. Teamsters Health Welfare & Pension Trust Funds, 944 F.2d at 1181).

The language of the instant policy states that Paul Revere must be notified of a claim for disability benefits: "Written notice of a claim must be given to us within 30 days after a covered loss starts, or as soon as reasonably possible." (PRLSP 16). "A claim must be based on written notice and written proof of loss." Id. After written notice is

submitted, Paul Revere provides a Proof of Loss form to the claimant whose burden it becomes to provide written proof of the disability to Paul Revere within one year. Id. Once this written proof is filed, Paul Revere will pay any benefits then due that are not payable periodically; and will pay at the end of each 30 days any benefits due that are payable periodically, subject to continuing proof of loss. Id. The policy also provides that approval of a request for an automatic increase in coverage would be subject to Paul Revere's underwriting guidelines. (PRLSP 5). I am satisfied that the language of this policy vests Paul Revere with discretion as the claim administrator to determine eligibility for benefits. Because the defendant is an insurance company which both administers and funds the policy, I will review the decision under a heightened arbitrary and capricious standard. Pinto v. Reliance Standard Life Ins. Co., 214 F.3d at 378, 383. This heightened form requires me to consider the nature and degree of apparent conflicts with a view to shaping the arbitrary and capricious review of Paul Revere's decision to limit benefits. Pinto v. Reliance Standard Life Ins. Co., 214 F.3d at 393. The degree of scrutiny is intensified to match the degree of the conflict, enabling the arbitrary and capricious standard to be more of a range than a point. The standard becomes more penetrating as the suspicion of partiality increases. Id. at 379, 392-393.

Here, Dr. Viechnicki has not claimed or presented evidence that Paul Revere's inherent conflict of interest clouded its determination to limit benefits. I assume that there was some sophistication imbalance between Dr. Viechnicki and Paul Revere. See

Stratton v. E. I. DuPont de Nemours & Co., 363 F.3d at 254 (assuming that plaintiff had no ERISA or claims experience and that defendant, a large company, was highly experienced). Despite the fact that Dr. Viechnicki is a physician and has successfully operated an Ob/Gyn practice over the years, there is no evidence that he is sophisticated in terms of insurance or ERISA issues. This factor supports a slight increase in the degree of scrutiny.

Further, no information imbalance will be inferred because Dr. Viechnicki alleged none. There is no evidence that Dr. Viechnicki has been prejudiced by a lack of accessibility of information. He certainly had the benefit of a copy of the policy, and continued telephone contact with representatives of Paul Revere. That contact was followed up by written correspondence memorializing the communication. Thus, this factor does not support an increase in the degree of scrutiny.

Similarly, there is no evidence in the record regarding the third factor. Thus, consideration of the exact financial arrangement between the insurer and the company does not affect the degree of scrutiny. See Marciniak v. Prudential Fin. Ins. Co. of Am., 184 Fed. Appx. 266 (3d Cir. 2006) (The burden of proof is on the claimant to show that a heightened standard of review is warranted in a particular case).

As for the final Pinto factor, I note that Dr. Viechnicki also makes no argument regarding Paul Revere's current status. There is no evidence of any potential financial or structural deterioration at Paul Revere which could negatively impact a presumed desire

to maintain employee satisfaction. In addition, I note that Paul Revere remains a viable company, and there is no evidence of any situation which would perhaps diminish its incentive to make benefit determinations impartially. This factor will also not affect the standard of review.

In addition to these factors, the Pinto court stated that courts should look not only at the result, i.e., whether it is supported by reason, but at the process by which the result was achieved. Id. at 393; see also Kosiba v. Merck & Co., 384 F.3d 58, 66 (3d Cir. 2004) (One more cause for heightened review has been established: demonstrated procedural irregularity, bias, or unfairness in the review of the claimant's application for benefits). The "procedural anomalies" in Pinto were: (1) the insurer's reversal of its original determination without the examination of additional evidence; (2) a self-serving selectivity in the use of evidence; and (3) a bias in decision-making to the benefit of the insurer. Pinto v. Reliance Standard Life Ins. Co., 214 F.3d at 378, 383. In the instant case, there is no evidence of procedural irregularities, bias, or unfairness in the review of Dr. Viechnicki's application for benefits.[10]

---

[10] A review of the record shows that Paul Revere followed a careful procedure in reviewing Dr. Viechnicki's claim for benefits: Initially, it conducted a telephone interview with Dr. Viechnicki concerning his claim. (PRLCL 59). It contacted Dr. Viechnicki's treating physicians and obtained all medical records and reports. (PRLCL 79-95, 305-316). Paul Revere then contacted vocational rehabilitation specialist, Mary E. Cloutier, to review and investigate Dr. Viechnicki's vocational information. (PRLCL 317-342). It consulted with Dr. Davids, a board-certified physician in internal medicine and cardiovascular diseases, who verified that Dr. Viechnicki's restrictions and limitations were supported by the medical records. (PRLCL 343). It then contacted Dr. Viechnicki's accountant to obtain Dr. Viechnicki's business and personal
(continued...)

Courts applying the heightened standard have been on the mild end of the sliding scale when they find no evidence of conflict other than the inherent structural conflict. Lasser v. Reliance Standard Life Ins. Co., 344 F.3d 381, 385 (3d Cir. 2003). Courts have been on the far end of the arbitrary and capricious range when they find procedural anomalies. Pinto v. Reliance Standard Life Ins. Co., 214 F.3d at 394; see also Weinberger v. Reliance Standard Life Ins. Co., 54 Fed. Appx. 553 (3d Cir. 2002) (finding the district court's application of moderate deference to be in error given the troubling aspects of Reliance's decision-making procedure).

Thus, I find that there was an inherent conflict caused by Paul Revere's role in both funding and administering benefits, and that Dr. Viechnicki could be considered unsophisticated in insurance and ERISA matters. There were, however, no procedural anomalies or irregularities. Because these factors show only a slight structural conflict of interest, I will utilize a slightly heightened arbitrary and capricious standard in reviewing Paul Revere's decision to limit benefits. This "mild skepticism" will be applied with an

---

[10](...continued)
tax returns for the last five fiscal years prior to the commencement of his disability, documentation of monthly earnings in the form of an accountant-prepared financial statement, and procedure productivity reports for 2002-2005. (PRLCL 107-293, 374-411, 418-448, 454-460, 464-471, 477-482, 486-491). Paul Revere then consulted its own financial consultant who completed a review of the financial information supplied by the accountants and determined Dr. Viechnicki's prior monthly income and current monthly income for April–October 2005. (PRLCL 461-463, 502-505, 472-474, 501, 483-485, 500). Finally, it sent Dr. Viechnicki a letter fully explaining its claims decision. (PRLCL 475-476, 524-525). After receiving Dr. Viechnicki's concerns, Paul Revere then spoke with Dr. Viechnicki on the telephone about the status of his claim explaining the Maximum Benefit Period clause in the policy. (PRLCL 494).

awareness that a court may not substitute its own judgment for that of plan administrators under either the deferential or heightened arbitrary and capricious standard. Stratton v. E.I. Dupont De Nemours & Co., 363 F.3d at 256.

Under this standard, a court may overturn the plan administrator's decision only if it was made without reason or is unsupported by substantial evidence. Abnathya v. Hoffman-LaRoche, Inc., 2 F. 3d at 45. These principles are applicable even if a third party or a court may have reached a different decision. A fiduciary's benefit decision is not arbitrary and capricious simply because another decision may also have been logical, or because another decision may have been a better decision. Id.; see also McLeod v. Hartford Life and Accident Ins. Co., 372 F.3d 618, 623 (3d Cir. 2004) (the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits).

After a review of the parties' motions for summary judgment and responses, it has become clear that their major point of contention is Paul Revere's application of the ninety-day elimination period to Dr. Viechnicki's claim for residual disability benefits. Paul Revere insists that the entire policy was subject to a Commencement Date of the ninety-first day of disability. Dr. Viechnicki counters that the Commencement Date applied only to claims for total disability and should not have been applied to his claim. He cites the Policy Schedule which provides for a Commencement Date under the section entitled, "Table of Total Disability Benefits." Also, the schedule provides for a zero-day

Qualification Period for residual disability which Dr. Viechnicki interprets to mean that there was no elimination or waiting period applied to claims for residual disability. In the alternative, he argues that if the Commencement Date were meant to apply to the entire policy even though it was written in the section for Total Disability Benefits, then the policy is ambiguous and thus must be interpreted in his favor.

After a careful review of the administrative record, the cross-motions for summary judgment, and the responses, I am convinced that Paul Revere is entitled to judgment as a matter of law. Even under the slightly heightened arbitrary and capricious standard of review, Paul Revere's application of the ninety-day elimination period to Dr. Viechnicki's claim for residual benefits was reasonable under the language of the policy.

The policy contains a Commencement Date which the policy defines as the date shown on the Policy Schedule when benefits begin during a disability. (PRLSP 7). The policy defines a disability as a continuing period of Total and/or Residual Disability. Id. The Commencement Date on this policy indicates that Paul Revere will not begin paying disability benefits until the ninety-first day of disability. (PRLSP 3). Dr. Viechnicki has apparently confused that term with the term "Qualification Period.[11]" The policy defines Qualification Period as the number of days shown on the Policy Schedule that Total

---

[11] I understand Dr. Viechnicki's argument that on the Policy Schedule, the Commencement Date has been placed directly under a line which reads: "Table of Total Disability Benefits." The placement on that page is unfortunate but the language of the entire policy makes clear throughout that the Commencement Date applies to all disability benefits. (PRLSP 3, 7). Under this heightened standard of review, I must defer to Paul Revere's reasonable explanation of policy terms.

Disability must continue before Residual Disability benefits can be payable. (PRLSP 7). The Policy Schedule indicates a Qualification Period of zero which means that a claimant would never have to be totally disabled before being eligible for residual disability. The Commencement Date applies to both Total Disability and Residual Disability. The policy indicates that residual disability benefits will begin on either the Commencement Date or the day after your total disability ends, if later. (PRLSP 8). It also indicates that total disability benefits will begin on the Commencement Date. Id. It was therefore reasonable that Paul Revere applied the ninety-day elimination period to Dr. Viechnicki's claim for residual disability benefits.

Furthermore, the policy contained a "Maximum Benefit Period" clause which provided that residual disability benefits beyond an insured's sixty-fifth birthday would not be paid unless the residual disability began within three months of that birthday. (PRLSP 3, 7). In that case, benefits would be paid for a period not to exceed three months while the insured remained residually disabled. (PRLSP 7). Dr. Viechnicki claimed residual disability on April 1, 2005, and qualified for benefits one month before his sixty-fifth birthday. Thus, Paul Revere paid Dr. Viechnicki residual disability benefits for three months, in accordance with the policy's maximum benefit period.

In conclusion, applying a slightly heightened arbitrary and capricious standard of review, I find that Paul Revere's decision to limit Dr. Viechnicki's residual disability benefits to three months as provided for in the policy was reasonable and supported by

substantial evidence. I will not disturb that decision.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M. BRUCE VIECHNICKI, M.D., **Plaintiff** | : : : | CIVIL ACTION |
| v. | : : : | NO. 06-2460 |
| UNUMPROVIDENT CORP., d/b/a THE PAUL REVERE LIFE INSURANCE COMPANY, **Defendant** | : : : : | |

## O R D E R

STENGEL, J.

AND NOW, this 11th day of June, 2008, upon consideration of the parties' cross-motions for summary judgment (Documents #26 and #27), the responses thereto (Documents #28 and #29), and the administrative record, it is hereby ORDERED that the plaintiff's motion is DENIED, and the defendant's motion is GRANTED.

The Clerk of Court shall mark this case CLOSED for all purposes.

BY THE COURT:

LAWRENCE F. STENGEL, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M. BRUCE VIECHNICKI, M.D.,<br>Plaintiff | : | CIVIL ACTION |
| v. | : | NO. 06-2460 |
| UNUMPROVIDENT CORP.,<br>d/b/a THE PAUL REVERE LIFE<br>INSURANCE COMPANY,<br>Defendant | : | |

## ORDER OF JUDGMENT

STENGEL, J.

AND NOW, this 11' day of June, 2008, in accordance with my Order granting the defendant's motion for summary judgment, and in accordance with Federal Rule of Civil Procedure 58, judgment is hereby entered on behalf of the defendant and against the plaintiff.

BY THE COURT:

_____
LAWRENCE F. STENGEL, J.